Andrew Louis ROBINSON, Respondent,

v.

MINNESOTA VALLEY IMPROVEMENT COMPANY and Aetna Casualty and Surety Company, Relators,

and

Custodian of the Special Compensation Fund, Respondent.

No. C9–86–527.

Supreme Court of Minnesota.

Feb. 20, 1987.

Kristin B. Maland, Edina, for respondent.

Patrick A. Lowther, Sleepy Eye, for Andrew Robinson.

Winston Ehlmann, St. Paul, for Custodian of Sp. Compensation Fund.

## OPINION

KELLEY, Justice.

Employer and insurer seek review of a decision of the WCCA setting aside certain findings of the compensation judge made in

connection with an award of ongoing disability compensation. The compensation judge found that employee was temporarily and totally disabled and entitled to ongoing compensation pursuant to stipulation, that employer/insurer had waived its statutory defense under the stipulation, that employee's claim for permanent total disability was premature and that employee's attorney was entitled to fees and disbursements. The WCCA, in a split decision, vacated these findings and substituted its own to the effect that employer/insurer had admitted that employee was permanently and totally disabled and that employer/insurer had not followed proper procedure for discontinuing disability compensation. The WCCA also vacated a portion of the award of attorney fees. Employer/insurer appealed the WCCA's findings and decision pertaining to any admission of permanent total disability and employee appeals the order vacating certain fees. We reverse.

Employee injured his back in 1961 while working for Wells Digging Company. He was compensated for 15% permanent partial disability of his back and this impairment was automatically registered with the State of Minnesota. Employee reinjured his back in 1971 while working for relator/employer Minnesota Valley Improvement Company and underwent a laminectomy. Employer and its insurer, Aetna, paid about 8 months of temporary total disability benefits and an additional 10% permanent partial disability.

Following his surgery, employee looked for employment without success. He eventually purchased a service station which he operated for about 2–2½ years. In October 1974, employee had a second laminectomy. Employee subsequently attempted to return to work at the service station but was unable to do so. The business was then sold. In July 1975 employee filed an amended claim petition seeking permanent total, continuing temporary total, and 25% permanent partial disability benefits. By stipulation, employer/insurer agreed to pay continuing temporary total disability benefits from October 1974, certain medical expenses, and retraining benefits.

Employee completed a 1½ year electronics course in May 1978, but was unable to find employment in that field. He tried various other jobs, all of which aggravated his back. He was hospitalized in March 1980 and fitted with a body cast. In 1981, he underwent further back surgery.

▇ Based on certain medical reports, employer/insurer on February 25, 1982, filed a notice of discontinuance of benefits stating, "Claim falls under '350–week statute'—Clmt. is not permanently totally disabled." The notice indicated that employee had received over 550 weeks of temporary total disability benefits. The "350–week statute", Minn.Stat. § 176.101, subd. 1 (1971), provided that temporary total disability benefits "shall be paid during the period of disability, but not exceeding 350 weeks." [1] Employee objected to the discontinuance and claimed that, based on certain other medical reports, he was entitled to permanent total disability benefits from February 1982 and continuing plus an additional 5% permanent partial disability of his back and 30% permanent partial disability of his leg.

In May 1983, the parties entered into a stipulation for settlement, the meaning of which is presently in dispute. The parties stipulated that employee would receive $12,500 for his disputed claim to total disability from February 23, 1982 through March 31, 1983 and that employer/insurer would pay attorney fees and certain stated medical costs. This stipulation then provided:

> (7) That it is stipulated and agreed by the employer and insurer herein that the employee shall receive *ongoing total disability benefits* from and after March 31, 1983 together with supplemental benefits at the appropriate rate so long as the employee's disability shall warrant.

---

1. The 350–week maximum was eliminated by 1975 Minn.Laws ch. 359, § 8. However, workers' compensation cases are governed by the law in effect at the time of the injury. *See Radermecher v. FMC Corp.,* 375 N.W.2d 809, 814 (Minn.1985).

(Emphasis added). The stipulation was approved June 1, 1983 and an award entered thereon.

In July 1984, employee filed a notice of claim to permanent total disability benefits from July 12, 1984 and continuing. Employer/insurer's answer alleged that employee "has essentially been collecting permanent total disability benefits since the employer completed making payment of 350 weeks of temporary total disability benefits to the employee some time in 1978." The answer also stated that all benefits owed to employee were being paid pursuant to the stipulation. In December 1984 employer/insurer filed a notice to discontinue benefits being paid pursuant to the May 1983 stipulation on the grounds that employee was not permanently disabled and was not entitled to benefits beyond the 350-week schedule.

An interim administrative decision of the Department of Labor and Industry, *see* Minn.Stat. § 176.242 (1984), denied discontinuance. The agency noted the stipulation provision that employee shall receive ongoing total disability benefits so long as his disability warrants and concluded, "the preponderance of information clearly indicates that the employee remains disabled, which is the basis for continuing benefits outlined in the Stipulation." Employer/insurer appealed by filing a petition to discontinue benefits. *See* Minn.Stat. § 176.242, subd. 5 (1984). The petition to discontinue was consolidated with employee's July 1984 claim to permanent total disability benefits. A hearing was held in May 1985.

The compensation judge found that employer/insurer had, in effect, waived the 350-week defense because the stipulation was entered into well after 350 weeks disability compensation had been paid. The compensation judge also found that employer/insurer had *not* accepted employee's claim to permanent total disability. Finally, the compensation judge found that although employee could be considered permanently totally disabled, such a determination was unnecessary in view of employer/insurer's obligation to continue paying ongoing total disability benefits. The compensation judge believed it preferable that employer/insurer continue paying benefits pursuant to the stipulation "so long as the employee's disability shall warrant" rather than pursuant to a finding of permanent total disability because the former method "enhanced" employee's "motivation" to find re-employment.

Employer/insurer appealed the finding that it had waived the right to raise the 350-week maximum on temporary total disability benefits. Employer/insurer argued that the ongoing payments for "total disability" pursuant to the stipulation were really *permanent* total disability benefits; payment thereof did not evince an intent to waive the limit on *temporary* total benefits. Employer/insurer also characterized the compensation judge's decision as a "determination that the employee is not permanently and totally disabled" which was not appealed and, hence, the law of the case. Employee, on the other hand, argued several reasons why the stipulation payment should be construed as temporary total disability benefits. The WCCA, in a split decision, agreed with employer/insurer that the "ongoing total disability benefits" pursuant to the stipulation were permanent total disability benefits. However, treating the stipulation as an admission of permanent total disability, the WCCA majority held that employer/insurer should have petitioned to vacate the award on stipulation in order to discontinue benefits.

Employer/insurer appeals the WCCA's holding that it admitted employee's permanent total disability and therefore should have petitioned to vacate the award on stipulation. Employee seeks review of the WCCA's vacation, without discussion, of the compensation judge's award of certain attorney fees and disbursements.

■■■ 1. Our review of the record requires us to reverse the WCCA's finding that the 1983 stipulation be classified as one for permanent total disability benefits. The plain meaning of the present stipulation indicates that the benefits provided are neither permanent nor temporary. The stipulation recites employer/insurer's claim that "the employee's temporary total dis-

ability had come to an end and that he was capable of engaging in substantial gainful activity," and employee's claim to "ongoing temporary total disability" and "that he is now permanently and totally disabled." Since the stipulation does, in other provisions, distinguish between temporary and permanent total disability, the use of the term "ongoing total disability benefits" appears deliberate. Such a deliberate avoidance of classifying the payments as either permanent or temporary total evinces an intent of the parties to settle future disputes over whether benefits were still warranted before a compensation judge in the same manner as other disputes in workers' compensation matters are litigated. The practical effect of the stipulation was to allow employee to receive disability payments without having to prove at that time permanent total disability while employer/insurer benefited from employee's continued rehabilitation efforts with the potential of a return to work. The employer/insurer also avoided at that time an adjudication that employee was permanently and totally disabled.[2]

2. The next issue is whether the proper procedure for adjudicating the parties' claims was followed and whether employer/insurer could claim the 350–week defense. Because the stipulation was not an admission by employer/insurer that employee was permanently and totally disabled, no purpose would have been served by first moving to vacate the award on stipulation before the issue of disability could have been adjudicated. The approved stipulation itself contemplated that the issue would arise. Generally, statutory provisions for vacating or "reopening" an award are inapplicable when the workers' compensation division reserves continuing jurisdiction over an award. 3 A. Larson, The Law of Workmen's Compensation

§ 81.53(a) (1983). Continuing jurisdiction exists when the order, either expressly or by its nature, lacks finality or when it calls for or permits some further step by a party. Id. at § 81.53(b). A notice of intention to discontinue pursuant to section 176.241 was the proper way to terminate or modify benefits being paid pursuant to an "open award" such as the award under the stipulation in this case.

In this case, employer/insurer sought to terminate benefits by claiming that they were temporary total benefits and barred by the 350–week limit, Minn.Stat. § 176.-101, subd. 1 (1971). The compensation judge implicitly agreed that the benefits were temporary total but held that, by agreeing to pay benefits long after the 350 weeks of temporary total benefits had been paid,[3] employer/insurer waived the 350–week defense. Employer/insurer concedes it was aware of the 350–week limit when it signed the stipulation, but argues it did not intend to waive that limit as a defense to payment. Rather, employer/insurer argues that the stipulation was not intended to waive either parties' rights; that it remained free to raise the 350–week limit as a defense and employee remained free to claim permanent total benefits.

While the stipulation is not inconsistent with employee retaining his right to seek permanent total disability benefits, it is inconsistent with employer/insurer retaining the right to raise the 350–week limit as a defense. If the 350–week limit makes the stipulation benefits unwarranted, then the benefits were unwarranted when the stipulation was signed. In other words, unless employer/insurer waived the 350–week limit (or unless it conceded permanent total disability), the stipulation is nugatory. Because employer/insurer argues, and we agree, that it did not concede permanent total disability, the only prac-

---

2. This stipulation was also not in contravention of public policy. Stipulations are to be encouraged. *See Maurer v. Braun's Locker Plant,* 298 N.W.2d 439 (Minn.1980). The important concern is that the effect of the stipulation did not lessen the employee's compensation as prescribed by the Workers' Compensation Act and did not require employee to do anything inconsistent with the purposes of the act. *See Rueh-*

*mann v. Consumers' Ice Fuel Co., Inc.,* 192 Minn. 596, 257 N.W. 501 (1934).

3. In fact, one year before the 1983 agreement to pay ongoing benefits, employer/insurer had already paid 550 weeks of temporary total disability benefits.

tical effect of this stipulation was a waiver of the 350–week defense in return for employee's agreement to continue with rehabilitation efforts. Employee's 1984 claim for permanent total disability, where he was continuing to fully cooperate with rehabilitation efforts, did not in and of itself repudiate the 1983 stipulation. If and when employee does not make a good faith effort to continue with rehabilitation efforts, employer/insurer can again seek to discontinue benefits. Minn.Stat. § 176.102, subd. 13.

The compensation judge found that employee's claim for permanent total disability was premature and that employee should continue with the rehabilitation efforts required of him in receiving temporary total disability benefits. That finding was not appealed by employee and is not now before us.

3. Employee seeks review of the WCCA's decision vacating the compensation judge's order that employer/insurer pay to employee 25% of his legal fees in excess of $250 pursuant to Minn.Stat. § 176.081, subd. 7. The WCCA also vacated the compensation judge's order that employer/insurer pay reasonable disbursements. No reasons were given for vacating these orders other than that the findings "are not in accord with the evidence and the law."

■ Minn.Stat. § 176.081, subd. 7 (1984) provides that the employee shall be awarded 25% of his attorney fees in excess of $250 if the employer or insurer unsuccessfully denies liability or unsuccessfully attempts to discontinue benefits. Minn.Stat. § 176.511, subd. 2 (1984) provides that a compensation judge may award "the prevailing party" reimbursement for actual and necessary disbursements. We conclude that the compensation judge's award of fees and disbursements was proper and

that the WCCA's vacation of portions of that award was erroneous.

Reversed and remanded for reinstatement of the decision of the compensation judge.